```
              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x

STEPHANIE BIEDIGER, ET AL       :  No. 3:09cv-621 (SRU)
                                :  915 Lafayette Boulevard
          vs.                   :  Bridgeport, Connecticut
                                :
                                :  April 17, 2009
QUINNIPIAC UNIVERSITY           :

- - - - - - - - - - - - - - - - x

                     HEARING


B E F O R E:

     THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

A P P E A R A N C E S:

   FOR THE PLAINTIFFS:

        PULLMAN & COMLEY
             850 Main Street
             P.O. Box 7006
             Bridgeport, Connecticut 06601-7006
         BY: JONATHAN B. ORLEANS, ESQ.
             ALEX V. HERNANDEZ, ESQ.

   FOR THE DEFENDANT:

        WIGGIN AND DANA, LLP
             400 Atlantic Street
             P. O. Box 110325
             Stamford, Connecticut  06911-0325
         BY: MARY A. GAMBARDELLA, ESQ.
             JONATHAN BARDAVID, ESQ.


              Susan E. Catucci, RMR
              Official Court Reporter
              915 Lafayette Boulevard
           Bridgeport, Connecticut  06604
                Tel: (917)703-0761
```

```
 1                    (2:50 O'CLOCK, P. M.)
 2              THE COURT:  Good afternoon.  We're here in the
 3   matter of Stephanie Biediger v. Quinnipiac University.
 4   Could I have appearances, please?
 5              MR. ORLEANS:  Your Honor, for the plaintiffs,
 6   Jonathan Orleans and Alex Hernandez from Pullman & Comley.
 7              MS. GAMBARDELLA:  For the defendant, Mary
 8   Gambardella and John Bardavid from Wiggin and Dana.
 9              THE COURT:  All right, thank you.
10              I wanted to start by setting a date for the
11   preliminary injunction hearing.  How does the week of
12   May 11th look?
13              MR. ORLEANS:  I beg your pardon, Your Honor?
14              THE COURT:  The week of May 11th?
15              MR. ORLEANS:  I believe it's okay with
16   plaintiffs.  May I have just a second?
17              (Pause)
18              MR. ORLEANS:  Yes, Your Honor, we can do that
19   week.
20              MS. GAMBARDELLA:  Your Honor, anything but that
21   Monday would be fine.
22              THE COURT:  Let me press you a little bit on
23   Monday.  That's my best day that week.
24              MS. GAMBARDELLA:  I can move it.
25              THE COURT:  You're sure?
```

```
 1                MS. GAMBARDELLA:  Yes.
 2                THE COURT:  Let's set it down for Monday at
 3      9:30.  I have most of Tuesday available as well and my
 4      hope is we can finish it in those two days.
 5                MS. GAMBARDELLA:  That was 9:00 a. m., your
 6      Honor?
 7                THE COURT:  Let's make it 9:30.
 8                MS. GAMBARDELLA:  All right, thank you.
 9                MR. ORLEANS:  Monday, the 11th is the Monday?
10                THE COURT:  Monday, May 11th at 9:30.  And we'll
11      have to talk about what we're going to do between now and
12      then.  Mr. Orleans, with that preliminary injunction
13      schedule set, what type of temporary relief are you
14      seeking?
15                MR. ORLEANS:  Your Honor, with that schedule set
16      for the preliminary injunction hearing, it seems to me
17      that it's probably not wise for us to push on the
18      Temporary Restraining Order for all of the relief that we
19      have requested in our papers.  We would certainly like to
20      see our plaintiffs -- and if I may, Your Honor, may I just
21      point out that Stephanie Biediger, Kayla Lawler and Erin
22      Overdevest are here in the courtroom, along with Coach
23      Robin Sparks who sits at counsel table.
24                THE COURT:  Very good.
25                MR. ORLEANS:  We would certainly like to see the
```

1  members of the team given permission to practice with
2  their coach, which has been denied them since early March.
3              THE COURT:  All right.  Let me press you on
4  that.  I received the defendant's memorandum just before
5  taking the bench and I went through it quickly.  My
6  recollection is there's a representation that the team has
7  been permitted to use the gym.  Is that --
8              MS. GAMBARDELLA:  Your Honor, if I may, in the
9  original papers what was represented was they weren't
10 allowed in the gym, period.  We're responding to that.
11 But to be totally forthright with the court, what I'm now
12 hearing may be a reference to the fact that the coach,
13 she's being paid through June 30th, through her contract.
14 She was asked not to work on campus.  The reason for that,
15 and I'll just state it for the record, is that, according
16 to my clients, there was more time spent trying to get
17 other coaches to join this effort and other students to
18 join this effort than there was coaching.  So, if the
19 claim now is being modified that they are not being denied
20 gym time but it's being denied time with the coach, we'd
21 like to be heard on that.
22             MR. ORLEANS:  Let me respond to that in two
23 ways, if I might, Your Honor.  Prior to March 4th, the
24 team was scheduled for practice in the gym on a daily
25 basis at 12:30 for three hours, two or three hour blocks.

1  I've got the schedules with me.  After March 4th, the team
2  was not scheduled for practices in the gym.  Intermural
3  volleyball is now scheduled in the gym in the evenings but
4  that's intermural volleyball, it's not practice for the
5  team.
6           The coach was asked not to practice with the
7  team, was instructed that she could not practice with the
8  team.  If the suggestion is that that request is somehow
9  justified because the university was concerned about her
10 efforts to oppose discrimination, it seems to me that that
11 is on its face retaliatory and not permissible.
12          Moreover, Coach Sparks is a faculty member at
13 the university.  She teaches a class, she has an office.
14 In that capacity, we would submit that she's entitled to
15 be on campus in her office preparing for her class.  And
16 since this program ostensibly is not dead until the end of
17 this academic year, she ought to be able to practice with
18 her team.  The team members are being harmed by losing the
19 opportunity to practice with their coach.
20          MS. GAMBARDELLA:  I'm sorry --
21          THE COURT:  Go ahead.
22          MS. GAMBARDELLA:  Two points on that.  Number
23 one, I don't think anything I said even remotely suggests
24 retaliation.  What I said, in case I wasn't clear, was
25 this.  The university, as an employer, as it is entitled

1   to do, is trying to manage and avoid disruption.  That's
2   number one.  It was in good faith believed that in the
3   context of her duties as coach, there was disruption.
4           Number two, with respect to formalized practices
5   in the gym, a temporary restraining order is not suitable
6   for that kind of relief.  This is a Fall sport.  Between
7   now and May 11, to suggest that the team will be so
8   irreparably harmed that this court should issue a
9   restraining order, a mandatory injunction, telling the
10  school they can't -- they must have them practice,
11  irrespective of what else is going on in the gym,
12  irrespective of what other resources have already been
13  affected -- this is not just a matter of the status quo.
14  There were other programs that were disbanded, too.  Men's
15  programs.  What do we do with them?
16          THE COURT:  Okay, but let me just try and cut
17  through.  And I understand that both sides are
18  understandably concerned about the situation and the
19  litigation, but it seems to me that we're talking about a
20  period of approximately three weeks.  It would, I think,
21  behoove everybody if this little issue about practicing
22  with the coach in the gym for whatever time they had been
23  scheduled for could be resolved.  I believe -- I really
24  don't want to have a TRO hearing on the question of --
25          MS. GAMBARDELLA:  Practice.

1            THE COURT:  -- practice with the volleyball team
2    at the gym.  That being said, I also think it would be in
3    everybody's interest if the university permitted that
4    practice to proceed for the next three weeks or so until
5    the hearing.  At that point, if nothing more, it's
6    mitigating the situation.  It's putting a little bit of
7    oil on water.  It's letting everybody do their thing
8    without presumably any great disruption to the university
9    because this was the plan until recently.
10            So, I'm going to request of the university that
11   they consider permitting this voluntarily to occur.  That
12   is, to have regular practices as they would have had up
13   through the hearing date or through a ruling date, and I'm
14   going to rule quickly.
15            MS. GAMBARDELLA:  May I inquire of opposing
16   counsel what is the representation on the record as to how
17   many practices would normally transpire in three weeks in
18   April for a Fall sport.
19            MR. ORLEANS:  The representation is, Your Honor,
20   my client will correct me if I'm wrong, that there would
21   be daily practices through May 2nd, which is the week
22   before finals and they don't practice during the week
23   before final exams or during finals weeks.  So we're
24   really just talking about the time period between now and
25   May 2nd, this coming week.

1           MS. GAMBARDELLA:  Just this week?

2           MR. ORLEANS:  Just the coming week, five days.

3           MS. GAMBARDELLA:  Okay.  So I guess my only
4    concern then is I will take your request to my client.  I
5    will impress upon them Your Honor's wishes in this regard
6    and your opinion in this regard and give that deference,
7    of course, as I always would, but I have to check whether
8    or not we're bumping anybody else.  That's my only
9    concern.

10           What I am more than happy to do is advise
11   opposing counsel -- today's Friday -- Monday, if you give
12   me until Monday to see whether or not that's feasible.  If
13   we're only talking about the next five days, I would then
14   submit to Your Honor I find it hard to fathom that harm
15   would be so immediate, dangerous and irreparable, that if
16   they miss some daily practices -- how long a day?  An
17   hour, two hours?

18           MR. ORLEANS:  Two to three hours per day.

19           MS. GAMBARDELLA:  A couple hours per day the
20   next five days, they're going to suffer from irreparable
21   harm.  However, that being said, I will convey Your
22   Honor's request.

23           THE COURT:  All right.  Is it possible to get
24   that done now?  Do you have someone you can call?

25           MS. GAMBARDELLA:  I can make a call.  I forgot

1    my bar card; they took my phone.
2             MR. ORLEANS:  I can use my phone.
3             THE COURT:  Let's just get that part sorted out.
4    That may lower the temperature a little bit and may not be
5    a bad thing.
6             MR. ORLEANS:  I will make the representation
7    according to the schedule, which is available through the
8    internet, that nothing else has been scheduled for the
9    gym.  That doesn't mean something's been scheduled that
10   hasn't been posted.
11            MS. GAMBARDELLA:  That doesn't anticipate the
12   reaction I may get, which motivated the request to begin
13   with, that this not occur, that the plaintiff coach be
14   canvassed that this is not an opportunity to elicit
15   litigants.  She can do that on her own time.  She's an
16   American, she's got First Amendment rights, she can do
17   that.  What she cannot do is, on my client's dime, on our
18   salary, is to utilize work time to do anything but
19   practice with the team.
20            THE COURT:  Well, okay.  I mean I think that
21   point's been made.  The litigation has been filed and, you
22   know, whether I have, what, five plaintiffs or ten
23   plaintiffs, the same issues are going to get litigated.  I
24   don't think there's any great advantage to anybody in
25   adding names to the caption of the case, but maybe I'm

1    wrong.
2           MR. ORLEANS:  The only -- we anticipate possibly
3    adding another recruit, a current high school student who
4    has been recruited to play at Quinnipiac but we're not
5    anticipating adding any more Quinnipiac current students
6    to the caption.  All Coach Sparks wants to do is practice
7    with her team.  She's not looking to use the time to do
8    any more organizing.
9           THE COURT:  All right, I appreciate that.  Why
10   don't you make your phone call and --
11          MS. GAMBARDELLA:  Well, the only reason I
12   hesitate, is there any other interim relief I need to
13   discuss?  I'd rather not make five phone calls.
14          THE COURT:  I don't believe so.
15          MR. ORLEANS:  I don't -- we'd like some sort of
16   continued assurance -- as I understand it, Your Honor, up
17   until now, the team, although they haven't been allowed to
18   practice, they've still had access to the weight room,
19   they had access to the trainers.  We don't want that to
20   change.
21          MS. GAMBARDELLA:  My clients have no intention
22   of altering the status quo and I mean status quo today,
23   not status quo in February.  But if -- and so what I'm
24   hearing now is an acknowledgement they've been given gym
25   privileges and we have no intention of revoking that.

1                MR. ORLEANS:  I'm not sure that gym privileges
2      accurately describes it but, in any event, what we're
3      looking for is the opportunity to practice.
4                MS. GAMBARDELLA:  My client has no intention of
5      altering that status quo.
6                THE COURT:  Okay.  Why don't you make your phone
7      call quickly, if you could, and then there are logistical
8      issues we have to take up.
9                MS. GAMBARDELLA:  Am I representing to my client
10     if we can work something out for the next five day?  Five
11     weekdays, right?  Counsel?
12               (Pause)
13               MR. ORLEANS:  Let me look.  If the court will
14     indulge me, I'll look at my calendar.
15               MS. GAMBARDELLA:  That would be great.
16               MR. ORLEANS:  It was so much easier in the days
17     we had paper calendars rather than Blackberries.
18               (Pause)
19               MR. ORLEANS:  We're talking about Monday, April
20     the 20th through Saturday, April 25th.  We'd like to be
21     able to practice everyday in that period.  The following
22     week is the week before finals so there won't be any
23     practice.
24               MS. GAMBARDELLA:  And if my client reaches some
25     voluntary agreement in this regard, you're withdrawing

1   your TRO request?
2           MR. ORLEANS:  With respect to that.
3           MS. GAMBARDELLA:  Well, again, I don't want to
4   make five phone calls.
5           THE COURT:  What else -- if you receive that
6   agreement, what other relief do you need between now and
7   May 11th?
8           MR. ORLEANS:  May I have a moment?
9           THE COURT:  Sure.
10          (Pause)
11          MR. ORLEANS:  Your Honor, thank you for your
12  indulgence.  After conferring with the clients, that's
13  really the only thing we need between now and the 11th
14  would be the ability to practice.
15          THE COURT:  So the TRO would be withdrawn?
16          MR. ORLEANS:  Yes.
17          MS. GAMBARDELLA:  I appreciate that.  If I may
18  have a few minutes and borrow your phone?  Unless Judge
19  Garfinkel will let me use his.
20          MR. ORLEANS:  There you go.
21          MS. GAMBARDELLA:  Thank you, sir.
22          (Pause)
23          MS. GAMBARDELLA:  Your Honor, as a showing in
24  good faith, my clients are going to agree to arrange that.
25          THE COURT:  Very good.  Thank you very much.

1   And, as I said, hopefully that will help us move forward
2   toward the May 11th hearing.
3           MS. GAMBARDELLA:  And so I take it for the
4   record that the request for temporary restraining order is
5   withdrawn with prejudice at this time?
6           MR. ORLEANS:  Yes -- with prejudice, I'm not
7   sure what exactly what that means.
8           MS. GAMBARDELLA:  Well, I don't want to come
9   back Monday with another TRO.
10          MR. ORLEANS:  We're not going to come back
11  Monday with another TRO unless -- if the university honors
12  its promise, we won't be back here until the preliminary
13  injunction hearing.
14          Could I just get some clarification?  Were we
15  told what time?
16          MS. GAMBARDELLA:  No, no, he said we'll arrange
17  it.
18          MR. ORLEANS:  Are we back on for 12:30 everyday?
19          MS. GAMBARDELLA:  He didn't seem concerned about
20  whatever time you needed to schedule.
21          MR. ORLEANS:  Okay.
22          THE COURT:  Good, thank you.  Thank you both.
23          All right, let's talk some logistics for the
24  hearing.  First off, what discovery, if any, do the
25  parties want to undertake between now and then?

1           MR. ORLEANS:  Well, Your Honor, from the
2    plaintiff's side, I think we want to do some expedited
3    document discovery.  We'll try to keep it limited but
4    certainly there's statistical information which we'd like
5    to get a hold of regarding participation rates, some
6    information about this alleged reorganization plan, some
7    information about the purported financial consequences of
8    the reorganization, as it's offered its justification for
9    the decisions that the university made.  So we would be
10   looking for some quick document discovery.  We would keep
11   it as limited as we reasonably could and I think we would
12   probably like to take the depositions of the athletic
13   director and the women's sports administrator before the
14   hearing.  Again, we'll keep those as short as we can.
15   We're not trying to stretch this out.
16           MS. GAMBARDELLA:  Your Honor, for the defendant,
17   understandably I assume some expedited discovery would be
18   in order but I am going to anticipate, based on what I've
19   just heard, some significant discovery disputes about
20   what's relevant and what is not relevant for the purposes
21   of a preliminary injunction hearing.
22           You read the papers, I don't need to educate you
23   about what's in the papers, but our argument is that they
24   are entitled to do this.  They are entitled to manage
25   their roster.  They have eliminated two men's sports as

1   well, and so I would like to consult with counsel on what
2   during deposition is going to be asked.  That is really --
3   we're talking about the next academic year.  They've
4   played this year.  This academy year, this volleyball
5   season is over, as far as I understand it, so we're
6   talking about the next academic year.
7           In terms of the roster for next year, I agree
8   counsel's entitled to back-up information on whether the
9   numbers are real, and therefore, whether the proportions
10  meet prong one of the test under Title 9.  Beyond that, I
11  have no problem talking with counsel but I don't want to
12  waive any disputes or any objections to the scope of the
13  anticipated expedited discovery.
14          THE COURT:  All right.  Well, what was just
15  mentioned seems relatively discrete, and the standard is
16  reasonably calculated to lead to the discovery of
17  admissible evidence.  I didn't hear anything that struck
18  me as obviously outside the range of what should be
19  discoverable.  I mean I haven't seen the requests yet, so
20  who knows.  But let me suggest this.  Can the plaintiff
21  pull together focused discovery requests and serve them
22  Monday?
23          MR. ORLEANS:  Yes, Your Honor.
24          THE COURT:  All right.  And can the defendant
25  object, if they wish to, by Tuesday?

1      MS. GAMBARDELLA:  Yes, Your Honor.

2      THE COURT:  And respond, either to the extent
3 not objected to or to the extent those objections are
4 overruled, by Friday?

5      MS. GAMBARDELLA:  Obviously it depends on the
6 breadth, not just the subject matter.  So to the extent
7 there's back-up documentation he's going to ask for, we'll
8 respond and then we can indicate if there's some
9 additional time needed to actually produce the
10 documentation.  We'll expedite -- we understand this is
11 expedited.  This is not an attempt to delay this at all.

12      THE COURT:  Let's try and get your objections,
13 if you have them --

14      MS. GAMBARDELLA:  Yes.

15      THE COURT:  -- by the end of the day on Tuesday
16 the 21st, and I will hear those objections either
17 Wednesday or Thursday, depending on how extensive they are
18 and so forth.  And hopefully we can get production Friday
19 or Monday, which would leave a little time for
20 depositions.  Can each side be limited to 14 hours of
21 deposition in between now and the hearing?

22      MR. ORLEANS:  Absolutely, Your Honor.  I don't
23 anticipate using that much for the two witnesses.  I would
24 want to reserve the opportunity to perhaps come back to
25 those witnesses again if the case isn't finally

1     determined?

2         THE COURT:  Of course.

3         MR. ORLEANS:  But for purposes of the

4     preliminary injunction hearing, I think I can do my two

5     witnesss in one day.  I'll do my best to do that.

6         THE COURT:  All right.  So let's -- it sounds

7     like it's more than necessary but let's limit each side to

8     14 hours of deposition.

9         MS. GAMBARDELLA:  Yes, Your Honor.  I'm not sure

10    I'm going to need it for an injunction in this case.

11        THE COURT:  I'd like to get from you in advance

12    of the 11th a sense of who your witnesses are going to be,

13    how long they are going to take, what stipulations you can

14    reach, what exhibits you're going to be submitting.  I

15    mean the typical pretrial logistics.

16        Obviously with a preliminary injunction hearing

17    I'm going to urge counsel to do what you can to reach

18    stipulations, to try and limit testimony, agree to the

19    admission of exhibits, et cetera.  So, in the first

20    instance I'm going to ask you to try to do that on your

21    own, but it seems to me we ought to have a pretrial

22    conference at least a couple days before the 11th.  What

23    about 3:30 on the afternoon of the 7th?

24        MS. GAMBARDELLA:  That's fine, Your Honor, for

25    the defendant.

1      MR. ORLEANS:  I can do that, Your Honor.
2      THE COURT:  Okay.
3      MS. GAMBARDELLA:  So would you want the
4 submissions by the day before or the morning of the
5 conference or --
6      THE COURT:  It would be nice to have what
7 amounts to a pretrial memo in effect the day before.
8      MS. GAMBARDELLA:  Okay.
9      THE COURT:  What else can we usefully do today?
10     MR. ORLEANS:  I think we pretty well covered it,
11 Your Honor.
12     THE COURT:  All right, thank you both.
13     MS. GAMBARDELLA:  I think we're fine.
14     THE COURT:  All right.  Let me urge you if you
15 have any disputes that come up, scope of discovery, not
16 getting documents produced in a timely way, trouble
17 getting a date for a deposition, whatever it might be,
18 please call me.  If I'm not available, I'll get back to
19 you as quickly as I can and we'll get this resolved right
20 away.
21     MS. GAMBARDELLA:  Thank you, Your Honor.
22     MR. ORLEANS:  Thank you, Judge.
23     THE COURT:  Thank you all.  We'll stand in
24 recess.
25

1     (Whereupon the above matter was adjourned at 3:20
2  o'clock, p. m.))
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T E

      I, Susan E. Catucci, RMR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

      /S/ Susan E. Catucci
      _____

      Susan E. Catucci, RMR
      Official Court Reporter
      915 Lafayette Boulevard
   Bridgeport, Connecticut  06604
       Tel: (917) 703-0761