**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **STEPHANIE BIEDIGER, KAYLA LAWLER** | ) | |
| **ERIN OVERDEVEST, KRISTEN** | ) | |
| **CORINALDESI, and LOGAN RIKER,** | ) | **Case No. 3:09-CV-621(SRU)** |
| **individually and on behalf of all** | ) | |
| **those similarly situated;** | ) | |
| **and** | ) | |
| **ROBIN LAMOTT SPARKS, individually,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **QUINNIPIAC UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | **February 1, 2010** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

**I.      Introduction**

Plaintiffs Stephanie Biediger, Kayla Lawler, Erin Overdevest, Kristen Corinaldesi,

and Logan Riker are female students and varsity athletes at Defendant Quinnipiac

University ("QU").[1] These Plaintiffs filed suit against Defendant on behalf of a class of

similarly situated persons (collectively, the "Student Plaintiffs") to enforce their civil

rights under Title IX of the Educational Amendments of 1972 (20 U.S.C. 1621 *et. seq.*)

("Title IX").

The Student Plaintiffs allege that QU violates Title IX by, among other things:  (1)

failing to provide female students with an equal opportunity to participate in varsity

intercollegiate athletics; (2) failing to provide female students with equal access to

athletic financial assistance; and (3) failing to provide female athletes with the same or

---

[1]     Plaintiff Robin Sparks is a varsity coach at QU.   She did not file her claims on behalf of a class and
thus she is not a party to this motion.

comparable benefits provided to male athletes.[2]   Plaintiffs filed this action primarily to obtain injunctive relief to stop the systemic, ongoing sex discrimination in QU's athletic department.   Accordingly, the Student Plaintiffs seek relief not just for themselves but for all persons who are harmed by and will continue to be harmed by QU's illegal, discriminatory actions.

As set forth in paragraph 1 of the First Amended Class Action Complaint:

> The Student Plaintiffs file this case as a class action on behalf of themselves and on behalf of a class of current, prospective, and future female students at Quinnipiac University ("QU") who are harmed by and want to end QU's sex discrimination in: (1) the allocation of athletic participation opportunities; (2) the allocation of athletic financial assistance; and (3) the allocation of benefits provided to varsity athletes.  They similarly file this action on behalf of females who are deterred from enrolling at QU because of the sex discrimination in QU's athletic program, including its failure to offer the varsity sports in which they want to participate (despite QU's failure to provide equal athletic participation opportunities to females).

The Student Plaintiffs seek entry of an order certifying this class, appointing them as its class representatives, and appointing their counsel as class counsel for the first, second, and third claims set forth in the Complaint.

## II.    Factual Background

In March, 2009, QU announced its intent to eliminate the women's varsity intercollegiate volleyball program at the end of the 2008-2009 academic year.  Plaintiffs opposed the proposed elimination and demanded its rescission, pointing out that eliminating any women's team would exacerbate QU's already existing sex

---

[2]    The Student Plaintiffs also allege that QU violates Title IX by discriminating against them in retaliation for their opposition to Defendant's Title IX violations.   However, at this time they file this Title IX retaliation claim (the fifth claim in the First Amended Complaint) solely on behalf of themselves and not on behalf of a class.

discrimination in the allocation of varsity intercollegiate athletic participation opportunities.

When QU rejected Plaintiffs' demands, Plaintiffs filed a Verified Class Action Complaint (Doc. No. 1) and a Motion for Temporary Restraining Order & Preliminary Injunction (Doc No. 2). This Court presided over a hearing on the motion on May 11 through 14, 2009.  On May 22, 2009, the Court issued its Ruling and Order (Doc. 51) granting the motion and enjoining QU from eliminating any women's athletic teams pending the outcome of this litigation.

In the initial complaint, the Student Plaintiffs alleged only that QU violated Title IX by failing to provide female students with an equal opportunity to participate in varsity intercollegiate athletics.   However, on December 9, 2009, the Student Plaintiffs filed a more comprehensive First Amended Class Action Complaint (Doc. No. 101) which alleges that QU also fails to provide female students with equal access to athletic financial aid and that QU fails to provide female athletes with the same or comparable benefits that it provides to male athletes.

As a result of these Title IX violations, Plaintiffs contend that QU cannot eliminate any varsity women's intercollegiate athletic teams and that instead QU must add more legitimate women's varsity athletic participation opportunities by adding more varsity women's sports.   Plaintiffs further contend that QU must either reallocate the athletic financial aid it offers or increase the amount of aid it provides to female athletes. Finally, Plaintiffs contend that QU must equalize the benefits it provides to athletes as set forth in Complaint Paragraph No. 135 and as required by 34 C.F.R. 106.41(C).  As

set forth below, these claims are inherently class-based and the primary remedy is injunctive relief.

## III.    Class Definition & Class Nature of the Claims

As set forth in paragraph 19 of the Complaint:

> . . . [T]he Student Plaintiffs seek to represent a class of all present, prospective, and future female students who are harmed by and want to end QU's sex discrimination in: (1) the allocation of athletic participation opportunities; (2) the allocation of athletic financial assistance; and (3) the allocation of benefits provided to varsity athletes.  They also file this action on behalf of females who are deterred from enrolling at QU because of the sex discrimination in its athletic program, including its failure to offer the varsity sports in which they want to participate (despite QU's failure to provide equal athletic participation opportunities to females).

Certification of such classes in Title IX athletics cases is appropriate, because the discrimination itself is inherently class-based and is measured on a program-wide rather than individual basis.  Athletic teams are sex-segregated into men's teams and women's teams so that males and females do not compete for the same opportunities.  Schools expressly choose how many athletic participation opportunities to provide to males and females by deciding which sports to offer for each sex.  They also choose how much athletic financial aid to provide to male and female athletes by deciding how much aid to provide to each, sex-segregated team.  Finally, because the teams are sex-segregated, schools discriminate whenever they provide more or better benefits to the athletes on men's teams than those on women's teams.

In injunctive relief cases such as this one, a single class action is necessary to avoid the possibility of conflicting verdicts.  Because Title IX cases are measured program-wide, they are inherently class based.  Defendant either violates Title IX or it

does not.  The violation is measured by how QU treats female students as a group and does not depend upon any individual student. For example, under claim one, Defendant either provides a "substantially proportionate" number of athletic participation opportunities to female students as a group, or it does not.  If Defendant does not, then it must add opportunities until it does.  If different Title IX actions brought by different female students reached different conclusions, QU and its female students would face inconsistent orders – one telling QU it cannot eliminate women's teams and/or must add women's participation opportunities and another telling QU the opposite.

The same predicament would arise under claims two and three.  Under claim two, Defendant either provides female athletes with financial assistance proportionate to their participation, or it does not.  If it does not, then it must provide additional aid to female athletes until it does, or it must reallocate the existing aid between male and female teams.  Whether any particular male athlete receives more athletic aid than any particular female athlete is irrelevant.  Instead, the claim requires proof that as a class female athletes receive disproportionately less aid than male athletes.

Under claim three, small differences in Defendant's treatment of male and female teams do not constitute Title IX violations unless, overall, QU provides men's teams with more or better benefits than it provides women's teams.  In other words, it would be legal for QU to provide the men's soccer team with more or better benefits than the women's soccer team if QU, in turn, provided the women's lacrosse team with more or better benefits than the men's lacrosse team.  Again, the claim itself requires a review of how QU treats female athletes as a class (as opposed to individuals) compared to how

it treats male athletes as a class.  Thus, all teams and all benefits must be considered in the same forum to avoid the confusion of inconsistent verdicts.

Courts have routinely recognized the class-based nature of Title IX claims and have certified classes including present, prospective, future, and deterred female students.  *See Cohen v. Brown Univ.*, 991 F.2d 888, 893 (1st Cir. 1993) (class of "all present and future Brown University women students and potential students who participate, seek to participate, and/or are deterred from participating in intercollegiate athletics funded by Brown");  *Favia v. Indiana University of Pennsylvania*, 7 F.3d 332, 335-36 (3rd Cir. 1993) (class of "all present and future women students at I.U.P. who participate, seek to participate, or are deterred from participating in intercollegiate athletics at the University");  *Haffer v. Temple Univ.*, 678 F. Supp. 517, 521 (E.D. Pa. 1987) (class of "all current women students at Temple University who participate, or who are or have been deterred from participating because of sex discrimination in Temple's intercollegiate athletic program.").  *See also Boucher v. Syracuse University*, 164 F.3d 113 (2nd Cir. 1999); *Paton v. New Mexico Highlands University*, 275 F.3d 1274 (10th Cir. 2002); *Ridgeway v. Montana High School Ass'n*, 633 F. Supp. 1564, 1567 (D. Mont. 1986), *aff'd* 858 F.2d 579 (9th Cir. 1988); *Bucha v. Illinois High School Ass'n*, 351 F. Supp. 69 N. D. Ill. 1982); *Leffel v. Wisconsin Inter-scholastic Athletic Ass'n*, 444 F. Supp. 1117, 1119 (E.D. Wis. 1978); *Communities for Equity v. Michigan High School Athletic Association*, 192 F.R.D. 568 (W.D.Mich. 1999); *Brust v Regents of the University of California*, E.D. Cal. Case No. 2:07-cv-1488 FCD/EF; *James v. Virginia Polytechnic Institute and State University*, W.D.Virginia Case No. 94-0031; *Sanders v. University of Texas at Austin, N.D.*, Texas Case No. 92-CA-405.

## IV.     Argument

Under FRCP 23, plaintiffs must satisfy all four of the requirements of FRCP 23(a) but only one of the three options of FRCP 23(b).  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.2d 124, 133 (2d Cir. 2001).; *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir.1999); *Marisol A. v. Giuliani*, 126 F.3d 372, 375-376 (2nd Cir. 1997).  Student Plaintiffs in this case easily meet this burden.

By providing a single forum in which to litigate similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources of federal courts.  *See Arden Architectural Specialties, Inc. v. Washington Mills Electro Mineral Corp.*, 2002 WL 314219195, * 11 (W.D.N.Y. Sept. 17, 2002) (noting the benefits of conserving judicial resources . . . by concentrating this litigation in one forum."); *accord Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be representative, wasteful, and an extraordinary burden on the courts.").

In determining whether to certify the proposed class, the Plaintiff's allegations must be treated as true.  *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978).  The Second Circuit has instructed District Courts that Rule 23 is to be given a liberal rather than a restrictive interpretation.  *See Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997); *accord Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.), *cert denied,* 474 U.S. 946 (1985) (holding that "the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." (citation omitted)).

Courts apply Rule 23 liberally in recognition of the public policy favoring class actions to police wrongdoing. *Schwartz v. Harp*, 108 F.R.D. 279, 281 (C.D.Cal. 1985), citing *Blackie v. Barrack*, 524 F.2d 891,903 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). Accordingly, any doubts about whether a class should be certified must be resolved in favor of certification. *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 651 (C.D.Cal. 2000), citing 4 Newberg on Class Actions §7540 (3rd 1992).

### A.   The Proposed Class Satisfies the Requirements of Rule 23(a)(1) – (4)

Rule 23(a) provides that a proposed class must satisfy four requirements:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (I) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The Student Plaintiffs and the proposed class readily satisfy these requirements.

### 1.   The proposed class is numerous and joinder of all class members is impracticable

The numerosity requirement of Fed.R.Civ.P. 23(a)(1) is satisfied when the number or nature of class members make their joinder as named plaintiffs impracticable. The standard does not require that joinder be impossible but that it would result in litigational hardship or inconvenience. *Robidoux v. Celani*, 987 F.2d 931, 935 (2nd Cir. 1993); 3B Moore's Federal Practice ¶230.5930. Courts consider the number of class members, the nature of the claims, the expense and inconvenience of trying individual suits, and other facts affecting the impracticability of joinder. In *Robidoux* the Court observed that, "[r]elevant considerations include judicial economy arising from the

avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux*, 987 F.2d at 936.  *See also In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2nd Cir. 1992).

Plaintiffs satisfy Fed.R.Civ.P. 23(a)(1) because (a) the number of potential class members is too large to make joinder practicable; (b) the specific identities of class members are too fluid and unknown to make their joinder possible; (c) the proposed class members are widely dispersed geographically; (d) it would be prohibitively expensive, inconvenient, and burdensome to litigants and the court for class members to join or bring separate actions, and (e) the size and nature of the claims is such that class certification is necessary to avoid the risk of inconsistent verdicts and/or the avoidance of injunctive relief.

a.   <u>Class size</u>

Plaintiffs are not required to provide an exact number of potential class members. *Robidoux,* at 987 F.2d 931, 935 (2d Cir.1993) ("Courts have not required evidence of exact class size or identity of class members in order to satisfy the numerosity requirement.").  Instead, "courts may make common sense assumptions to support a finding of numerosity."  *Weissman v. ABC Fin. Servs., Inc.*, 203 F.R.D. 81, 84 (E.D.N.Y.2001) (internal quotation omitted).  The Second Circuit has found that "numerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir.1995).  The *Robidoux* court cited authority for classes as small as 14, 22, or 40 members.  *Robidoux*, 987 F.2d at 935.

Here, the number of class members is large.  Plaintiffs demonstrated at the preliminary injunction hearing that even using QU's own numbers and its own counting methods, QU must keep all existing women's sports and add more than 100 additional women's athletic participation opportunities in order to comply with Title IX's requirements for participation equity.  Plaintiffs also showed that if those numbers are audited for authenticity, QU must add 150 or more opportunities.  If Defendant reaches participation equity, then it must reallocate more than $100,000 of QU's existing athletic financial aid budget from men to women or (if QU chooses to keep men's aid the same), it must add more than $500,000 in athletic scholarships to the women's teams.  This money will be shared by the 200 existing female athletes plus more than 100 new female athletes.  Finally, when assessing whether QU provides male athletes with more or better benefits than it provides female athletes, the court must examine how QU treats all female athletes; that is, the 200 current female athletes, and the additional female athletes necessary for equity.

The class size is much larger when all prospective, future, and deterred female students are taken into account.  Current high school students are now considering whether to attend QU.  Many of these students will soon be QU students while others will be deterred from enrolling at QU because of its discrimination.  All of these individuals are members of the proposed class because all are harmed by or imminently will be harmed by the sex discrimination in QU's athletic department.  There simply are too many females harmed by QU's discrimination to add them all as individual plaintiffs.

b. Prospective, future, and deterred female students

Joinder of all class members in the present action is impracticable because the identities of many of the proposed class members are not and cannot currently be known. *National Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D.Cal. 1986) ("where the class includes unnamed, unknown future members, joinder of unknown individuals is impracticable and the numerosity requirement therefore met, regardless of class size"). While the names of the existing 200 female athletes are known, the names of the prospective, future, and deterred female students are not because they are now in high school or junior college. They may, moreover, number in the thousands. They are known to exist because QU continues to fill its freshman and transfer classes, and to fill its existing women's athletic teams. But no one presently can know who will actually choose to enroll at QU. Courts routinely certify classes such as this one which include future and prospective members. Notably, all of the classes certified in the Title IX cases referenced in Part III above included prospective/future students. *See also Weaver v. Reagan*, 701 F.Supp. 717, 721 (W.D.Mo. 1988) (joinder of unknown persons or future class members who will be denied benefits in the future is impracticable, necessitating class certification); *Atkins v. Toan*, 595 F.Supp. 104, 105 (W.D.Mo. 1984) (same); *Gomez v. Illinois State Bd. of Ed.*, 117 F.R.D. 394, 399 (N.D.Ill. 1987) (future students "are necessarily unidentifiable, and therefore, joinder is clearly impracticable").

Similarly, no one can know the names of all the prospective female students who are now considering or soon will consider applying to QU but who will decide not to enroll when they learn about QU's discrimination or when they discover that QU does

not offer the sports they want to play, does not offer enough athletic financial aid, or does not provide female athletes with the benefits necessary for success.  Joinder of these deterred female students is not practicable.  *See Phillips v. Joint Legislative Committee on Performance*, 637 F.2d 1014, 1024 (5th Cir. 1981) (class included persons deterred from applying because of defendant's discriminatory practices); *Doe v. Charleston Area Med Center, Inc.*, 529 F.2d 638, 645 (4th Cir. 1975) (fact that class members exist but are not specifically identifiable supports – rather than detracts from – class certification).

Joinder is also impracticable because of the inherently fluid nature of the proposed class.  Its members have already changed during the course of the litigation and will continue to do so as new female students enroll at QU and others quit, transfer, or graduate.  More than 25% of the class members change each and every year simply because of the nature of academic programs and the four-year athletic eligibility limitations of the NCAA.  *See Santiago v. City of Philadelphia*, 72 F.R.D. 619, 624 (E.D.Pa. 1976) (constant rotation of juveniles through youth study center made joinder impracticable in an action challenging the legality of the center's policies); *Atkins v. Toan*, 595 F.Supp. 104, 105 (W.D.Mo. 1984) (joinder impracticable when class membership is fluid); *Jane B. v. New York City Dept. of Social Services*, 117 F.R.D. 64, 70 (SDNY 1987) (joinder made impracticable by the "fluid compositions" of the defendant juvenile centers); *Arthur v. Starrett City Assoc.*, 98 F.R.D. 500, 505-506 (EDNY 1983) (fluctuating class membership weighs in favor of class certification); Folsom v. Blum, 87 F.R.D. 443, 445 (SDNY 1980); *Von Collin v. County of Ventura,* 189 F.R.D. 583, 590 (C.D.Cal. 1999) (identity of pretrial detainees fluctuates over time).

c.     Geographic dispersal

The class members are widely dispersed geographically.  While QU's current female athletes spend the school year in Connecticut, they come from all parts of North America.  The prospective and future students now considering whether to enroll at QU live throughout the world, as QU draws its student body from nearly every state and from many foreign nations.   It is not practicable to expect each such student to separately pursue her own action from afar.

d.     Expense and burden

It would be expensive, inconvenient, and highly burdensome to litigants and the Court if each victim of QU's sex discrimination filed her own lawsuit – or even if each such victim joined as a named plaintiff.  The oldest class members are college students. The prospective, future, and deterred class members are all minors who are now deciding whether to attend QU or who will soon do so.   All of the proposed class members are young and lack the time, financial resources, and legal sophistication to file separate claims.  Federal court litigation is expensive.  Filing separate actions would unnecessarily increase that cost, even if such plaintiffs could find counsel who have Title IX experience and who are willing to rely on Section 1988 for fees.  It would be unnecessarily burdensome for the court to manage several different suits which challenge the exact same discriminatory practices.  *United States v. Sielaff*, 546 F.2d 218, 222 (7th Cir. 1976) (class certification appropriate to avoid multiple law suits and to protect those who, "by reason of ignorance, poverty, illness, or lack of counsel" are unable to bring an action on their own behalf).

The prospect of retaliation makes it more difficult for individual plaintiffs to come forward to enforce their rights.  Young students face intimidation, ostracism, and retaliation for speaking out against their schools.  Indeed, the named plaintiffs have filed a retaliation claim against Defendant.  This reasonable fear weighs in favor of including all prospective plaintiffs as members of the class and of remedying all the discrimination they face in a single class action.  *See United States Fidelity & Guaranty Co. v. Lord*, 585 F.2d 860, 870 (8th Cir. 1978) ("*Lord*") (class action proper in light of retaliation risk against named plaintiffs); *Arkansas Educational Ass'n v. Board of Ed of the Portland, Arkansas School District*, 446 F.2d 763, 765-766 (8th Cir. 1971) (certification of class of teachers in employment case proper due to a "natural fear or reluctance" to challenge their employer).

   e. <u>Nature of the claims</u>

The nature of the class claims makes certification appropriate because the requested injunctive relief inherently affects all members of the class.  Without class certification, all parties will risk the entry of inconsistent verdicts now and over time.

Class certification is especially appropriate in this case as the only means to effectively remedy the Defendant's systemic, ongoing discrimination against female students.  Without class certification, Defendant will be allowed to avoid the injunctive relief necessary to compel Title IX compliance and to continue or resume its discrimination upon the graduation of the named plaintiffs.  *Fox v. State Bd. of Trustees of SUNY*, 42 F.3d 135 (2nd Cir. 1994); *Cook v. Colgate University*, 992 F.2d 17, 19 (2nd Cir. 1993) (discussing the need for class certification to avoid inevitable mootness

claims in education cases); *Jane B.*, 117 F.R.D. at 72 (class certification necessary to guarantee that relief benefits all members of the class and to avoid mootness).

(Please *see also* Part III, pp. 4-6, above.)

2.    **Common questions of law and fact apply to the class**

A plaintiff class satisfies the commonality requirement of Rule 23(a)(2) if the class claims share a common question of law or fact or arise from the same remedial theory.  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997) (common question existed whether city failed to provide mandated services to children); *Drexel Burnham*, 960 F.2d at 290-291 (common question whether defendants violated securities law).  *In re Colonial Partnership Litigation*, 1993 U.S.Dist. LEXIS 10884 (D.Conn. 1993) (common legal question regarding compliance); *Westman v. Textron, Inc.*, 151 F.R.D. 229, 230 (D.Conn. 1993) (common question re ERISA compliance).

Questions "of law or fact common to the class" must "predominate over questions peculiar to individual members of the class."  *Civic Ass'n of the Deaf*, 915 F.Supp. at 632-33 ("When such common questions do predominate, differences among the questions raised by individual members will not defeat commonality.").  Courts have found that "the test for commonality is not demanding" and is met so long as there is at least one issue common to the class.  *Mullen v. Treasure Chest Casino*, LLC., 186 F.3d 620, 625 (5th Cir.1999).

Commonality is found when a plaintiff "'identif[ies] some unifying thread among the members' claims . . . even though there exists 'some factual variation among class members' specific grievances.'"  *Well v. Long Island Sav. Bank, FSB*, 200 F.R.D., 164 (E.D.N.Y. 2001) (internal citations omitted).  "Factual identify between the plaintiff's claims and those of the class he seeks to represent is not necessary."  *Senter v.*

*General Motors Corp.*, 532 F.2d 511 (6th Cir. 1976).  Thus, simply because one class member suffered a different effect from the Defendants' violation of Title IX, this does not make her claims uncommon to those of the other Plaintiffs.

In the instant case, the claims of all proposed class members include the same legal questions whether QU engages in sex discrimination and violates Title IX in:  (1) the allocation of athletic participation opportunities; (2) the allocation of athletic financial assistance; and (3) the allocation of benefits to varsity athletes.  As set forth above, these claims are inherently class-based because they require a program-wide comparison of how QU treats its sex-segregated men's and women's teams.

The factual questions in the case are also common.  They include the following.

(a) how many legitimate athletic participation opportunities does QU provide to male and female students?;

(b) how many of these opportunities may be counted under Title IX?;

(c) how much athletic financial aid does QU provide to male and female athletes?;

(d) is that aid equitably distributed among male and female athletes?;

(e) which athletic benefits (such as equipment, supplies, uniforms, coaching, facilities, locker rooms, travel, academic support, publicity, medical and training services, strength and conditioning services, recruiting support) does QU provide to male and female athletes?; and

(f) does it provide comparable benefits to female athletes?

These are the same questions of law and fact that were common to the class plaintiffs in the Title IX class actions cited in Part III above. Indeed, civil rights discrimination

16

cases inherently involve such common issues because the discrimination itself is class-based.

All members of the proposed class are harmed by or imminently will be harmed by the sex discrimination in QU's athletic department.  All members of the proposed class seek the same equitable remedy – compliance with Title IX .  All members of the proposed class will benefit from relief granted in this case.  The proposed class satisfies the requirements of Rule 23(a)(2).

### 3.     The class representatives' claims are typical of those of the class

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed.R.Civ.P. 23(a).   The Supreme Court has observed that "the commonality and typicality requirements of Rule 23(a) tend to merge."  *Falcon*, 457 U.S. at 158 n. 13, 102 S.Ct. 2364.  The requirement is usually met when the representative plaintiffs are subject to the same policies as the putative class members.  *See Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").  Typicality "requires that claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Robinson v. Metro-North Commuter R. R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) (citing *Marisol v. Giuliani*), 126 F.3d 372, 376 (2d Cir. 1997)).  In essence, typicality "requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of the other members of the

proposed class." *Caridad*, 191 F.3d 283, 293 (2d Cir. 1999) (internal quotations omitted).

Here, the named Student Plaintiffs' claims are not just typical of the class claims, they are identical:  (1) they are denied or imminently will be denied an equal opportunity to participate in varsity intercollegiate athletics at QU; (2) they are denied or imminently will be denied an equal allocation of athletic financial assistance; and (3) they are denied or imminently will be denied an equal allocation of the treatment and benefits provided to varsity athletes at QU.  The named Student Plaintiffs and all members of the proposed class are subject to or soon will be subjected to and harmed by the same systemic, ongoing sex discrimination in QU's athletic department.  All have Title IX claims based upon the same legal theories and all seek and will benefit from injunctive relief.  All want to participate in varsity intercollegiate athletics, receive athletic scholarships, and receive the same athletic benefits that the men's teams already receive.  The Plaintiffs have satisfied their burden of showing typicality.

**4.    The named plaintiffs and their counsel are adequate class representatives**

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class."  Fed.R.Civ.P. 23(a).  This requires Plaintiffs to demonstrate both that their attorneys are competent to handle the litigation and that the named Plaintiffs do not have interests that are antagonistic to the class.  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992).

a.    Class counsel

The undersigned counsel are competent to handle the class claims in this action. All have litigated class action claims in federal court.  They have demonstrated their

18

competence in this case and their willingness to vigorously pursue the class claims by prevailing on their motion for preliminary injunction.  Attorney Kristen Galles has litigated Title IX class actions in federal courts throughout the country for more than 15 years, including two prior Title IX class actions in Connecticut.  (*See* Declaration of Kristen Galles In Support of Class Certification, filed contemporaneously with this Memorandum.)  The ACLU has litigated class action civil rights cases throughout the nation for many years.  Likewise, Attorneys Jonathan B. Orleans and Alex V. Hernandez, from the law firm of Pullman & Comley, LLC., have extensive experience as litigators and trial and appellate counsel.  (*See* Declarations of Jonathan B. Orleans and Alex V. Hernandez In Support of Class Certification, filed contemporaneously with this Memorandum.)

> b.    <u>Class representatives</u>

Two factors generally inform whether class representatives satisfy the Rule 23(a)(4) requirement: "(1) absence of conflict and (2) assurance of vigorous prosecution."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (holding that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members); *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir.1985).

Here, the named plaintiffs will fairly, adequately, and vigorously represent the interests of the class.  They do not have interests antagonistic to the interests of the members of the class.  They have been subjected to the same discrimination.  The Student Plaintiffs want to stop QU from eliminating any women's teams and to compel QU to add more women's teams until the school reaches equity under Title IX.  The

Student Plaintiffs want to require QU to equitably allocate athletic financial aid so that all female athletes can share in the additional scholarship money.[3]  And they want to make sure that all female athletes receive the same athletic benefits that male athletes receive (commensurate with their particular sports).  The named plaintiffs are not aware of any interests that may be antagonistic to those of the proposed class and do not expect that any will arise.[4]

**B.      The Proposed Class Satisfies Rule (23)(b)(2)**

This action falls squarely under FRCP 23(b)(2) which permits class action status where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Plaintiffs are entitled to a declaration that QU engages in sex discrimination and violates Title IX because Defendant either violates Title IX as to <u>all</u> of its female students or it does not – there can be no finding that the University violates Title IX as to only some female athletes.  Moreover, all class members are entitled to the same injunctive relief: (1) to restrain QU from eliminating any women's varsity sports and/or to require QU to add more women's varsity sports, (2) to require QU to allocate more athletic financial assistance to female athletes, and (3) to provide female athletes with the same treatment and benefits provided to male athletes

A FRCP 23(b)(2) "class action is intended for cases where broad, class-wide injunctive or declaratory relief is necessary to redress a group-wide injury."  *Robinson v.*

---

[3]     Even if women's coaches ultimately allocate the additional scholarships differently, all class members have the same legal claims and seek the same relief – more athletic aid for female athletes.

[4]     The named Student Plaintiffs expect to file shortly their declarations in support of this motion.

*Metro-North Commuter R.R.*, 267 F.3d 147 (2d Cir. 2001), quoting *Fed. R. Civ. P.* 23(b)(2), Advisory Committee note (b)(2); 7A Wright & Miller §1776 ("subdivision (b)(2) was added to Rule 23 in 1966 in part to make it clear that civil rights suits for injunctive or declaratory relief can be brought as class actions.").

Class actions under Rule 23(b)(2) are appropriate whenever a class primarily seeks declaratory or injunctive relief based upon the acts or omissions of a defendant with respect to the class as a whole.  *Marisol A.*, 126 F.3d at 378.  The Rule's advisory committee notes note that the rule is satisfied "even if the action or inaction has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."  *Santago*, 72 F.R.D. at 626, citing Advisory Committee Notes to proposed Rules of Civil Procedure, 39 F.R.D. 69, 102 (1966).  Thus, even if only the named plaintiffs or even if only some of QU's female athletes were subjected to Defendant's sex discrimination, this action would satisfy the requirements of Rule 23(b)(2) because QU's discriminatory policies and actions are generally applicable to all members of the prospective class.

In the Second Circuit, injunctive relief must predominate in order for a class to be certified under Rule 23(b)(2).  *Eisen v. Carlisle & Jacquelin ("Eisen II")*, 391 F.2d 555, 564 (2d Cir.1968).  Thus, an examination of the relief sought is integral to determining whether an action is "appropriate" for final injunctive relief or declaratory relief.  The requirement that injunctive relief predominate is intended "to ensure a degree of cohesiveness that would otherwise be easily disrupted when a plaintiff class seeks monetary remedies, since monetary remedies 'are more often related directly to the

disparate merits of individual claims.'"  *Parker v. Time Warner Entertainment Co., L.P.*, 198 F.R.D. 374, 378 (E.D.N.Y. 2001).

The Student Plaintiffs seek specific injunctive relief as set forth in Paragraph 32 of the First Amended Complaint.

> In particular, all class members are entitled to a declaration that QU engages in sex discrimination and violates Title IX because Defendant either violates Title IX as to all female students or it does not.   Moreover, all class members are entitled to injunctive relief (1) to restrain QU from eliminating any women's varsity sports and/or to require QU to add more women's varsity sports; (2) to require QU to allocate more athletic financial assistance to female athletes; and (3) to provide female athletes with the same treatment and benefits provided to male athletes.

This relief applies in common to all members of the proposed class.

The Student Plaintiffs' claims of discriminatory treatment are particularly tailored to injunctive relief.  The (b)(2) class "serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment."  *Baby Neal v. Casey*, 43 F.3d 48, 58-59 (3d Cir. 1994).  Indeed, (b)(2) was "designed for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often ascertainable or amorphous class of persons."  *Barnes v. The American Tobacco Company*, 161 F.3d 127 (3d Cir. 1998) *citing Conte, 1 Newberg on Class Actions* 3d 4.11.  *See also Walters v. Reno*, 145 F.3d 1032, `047 (9th Cir. 1998) ("As the Advisory Committee Notes explain, 23(b)(2) actions have been held to be particularly appropriate.  *Johns v. DeLeonardis*, 145 F.R.D. 480, 484 (N.D. Ill. 1992).

In order to effectively eradicate such discrimination and to implement the broad remedial purposes of civil rights statutes, courts liberally apply all the requirements of FRCP 23 to such cases.  *Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330,

1333 (9th Cir. 1977) (court reversed district court's denial of class certification because it failed to consider broad remedial purposes of Title VII).  *See also Cannon v. University of Chicago*, 441 U.S. 677, 706 (1979) (discusses broad remedial purpose of Title IX).

Because Defendants have acted in a discriminatory manner with respect to all class members, and because the named plaintiffs seek declaratory and injunctive relief to remedy that discrimination, the proposed class is properly certifiable under Rule 23(b)(2).

<u>**CONCLUSION**</u>

**WHEREFORE**, based on the foregoing, Plaintiffs move this Court for entry of an Order:

1.     Certifying claims one, two, and three of this litigation as a class action pursuant to Fed.R.Civl.P 23(a) and 23(b)(2) on behalf of a class defined as follows:

All present, prospective, and future female students at QU who are harmed by and want to end QU's sex discrimination in:  (a) the allocation of athletic participation opportunities; (b) the allocation of athletic financial assistance; (c) the allocation of benefits provided to varsity athletes; and all females who are deterred from enrolling at QU because of the sex discrimination in its athletic program;

2.     Appointing the undersigned counsel as class counsel, pursuant to Fed.R.Civ.P. 23(g).;

3.     Appointing the named plaintiffs as representatives of the class; and

4.     Granting such other relief as the Court deems just.

Dated:  February 1, 2010

Respectfully submitted,

THE PLAINTIFFS

By:  /s/ Alex V. Hernandez
Alex V. Hernandez (ct08345)
Jonathan B. Orleans (ct05440)
Pullman & Comley
850 Main Street
Bridgeport, CT 06601
(203) 330-2129 (phone)
(203) 576-8888 (fax)
jorleans@pullcom.com
ahernandez@pullcom.com

Kristen Galles
Equity Legal
10 Rosecrest Avenue
Alexandria, VA  22301
(703) 683-4491 (phone)
(703) 683-4636 (fax)
kgalles@comcast.net

David McGuire (ct27523)
ACLU Foundation of Connecticut
2074 Park Street, Suite L
Hartford, CT 06106
(860) 523-9146 (phone)
(860) 586-8900 (fax)
jmatthews@aclu-ct.org

Their Attorneys

## CERTIFICATION OF SERVICE

I hereby certify that on the date hereon, a copy of the foregoing *Memorandum of Law in Support of MOTION FOR CLASS CERTIFICATION* was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/ Alex V. Hernandez
Alex V. Hernandez (ct08345)


ACTIVE/73061.1/AHERNANDEZ/2006951v1