```
            UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - X
                                 :
STEPHANIE BIEDIGER, ET AL        :
                                 : No. 3:09cv-621 (SRU)
                                 : 915 Lafayette Boulevard
             vs.                 : Bridgeport, Connecticut
                                 :
                                 : June 22, 2010
QUINNIPIAC UNIVERSITY            :
                                 :
- - - - - - - - - - - - - - - - X


         BENCH TRIAL - AFTERNOON SESSION

B E F O R E:

    THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.


A P P E A R A N C E S:

    FOR THE PLAINTIFF:

        PULLMAN & COMLEY
            850 Main Street
            P.O. Box 7006
            Bridgeport, Connecticut  06601-7006
        BY: JONATHAN B. ORLEANS, ESQ.
            ALEX V. HERNANDEZ, ESQ.

        KRISTEN GALLES, ESQ.
            Equity Legal
            10 Rosecrest Avenue
            Alexandria, Virginia  22301

    FOR THE DEFENDANT:

        WIGGIN AND DANA, LLP
            400 Atlantic Street
            P.O. Box 110325
            Stamford, Connecticut  06911-0325
        BY: MARY A. GAMBARDELLA, ESQ.


                                         (CONTINUED)
```

```
            PROSKAUER ROSE
                1585 Broadway
                New York, New York,  10016
        BY:  EDWARD A. BRILL, ESQ.
                SUSAN D. FRIEDFEL, ESQ.
                REBECCA BERKEBILE, ESQ.




          Viktoria V. Stockmal, RMR, CRR
             Court Reporting Services
            119 Poverty Hollow Road
               Newtown, CT 06470
                (203) 470-0335
```

# **INDEX**

EXAMINATION

Witness Name                                                          Page

JEFFREY WEBB
   Cross By Ms. Friedfel................................ 451
   Re-Direct By Ms. Galles ............................. 456

JACK McDONALD
   Direct By Mr. Orleans................................ 458
   Cross By Mr. Brill .................................. 527
   Re-Direct By Mr. Orleans ............................ 544

MARY ANN POWERS
   Direct By Mr. Hernandez ............................. 550

1                    (RECONVENED AT 1:45 P.M.)
2              THE COURT:  My apologies for the delay.
3              MS. FRIEDFEL:  Your Honor, we decided to mark
4    the document that was disclosed to us earlier today, I
5    believe that's Exhibit GM?
6              THE COURT:  GM?
7              MS. FRIEDFEL:  I think so.  I'm just going to
8    show a copy to the witness.
9              MS. GALLES:  Your Honor, just for the record,
10   we renew our objection in case, you know -- that the
11   prior objection doesn't carry over, so --
12             THE COURT:  Your objection on privilege
13   grounds?
14             MS. GALLES:  Yes, yes.
15             THE COURT:  That's fine.  All right.  Do you
16   have another objection to the document?
17             MS. GALLES:  Well obviously, it's hearsay.
18   But she's welcome to try to overcome that.  I mean, it's
19   an e-mail.
20             THE COURT:  Okay.  Are you objecting on --
21             MS. GALLES:  Yes, we are objecting on the
22   privilege and the grounds of hearsay.
23             MS. FRIEDFEL:  May I proceed?
24             THE COURT:  Sure.
25

```
1      J E F F R E Y     W E B B,    called as a witness for
2      the Plaintiff, having been previously duly sworn by the
3      Court, testified futher as follows:
4      CROSS-EXAMINATION
5      BY MS. FRIEDFEL: (CONT'D.)
6      Q.   Mr. Webb, could you look at page 4 of the document I
7      just showed you, Exhibit GM?
8      A.   Page 4?
9      Q.   Yes, it says "4 of 5" at the top right corner.  I
10     don't know if it's actually the fourth page.  I think it
11     says -- it appears that the document is page -- paginated
12     2 of 5, 3 of 5, 4 of 5.
13     A.   Oh, okay.  All right.
14     Q.   I'm sorry.  I don't know --
15     A.   Not the actual fourth page, but the paginated
16     version.  Okay, got it.
17     Q.   If you look at that e-mail, it appears to be an
18     e-mail from Terry Lakowski (ph.) to yourself, Bill Boggs
19     (ph.), Greg Web, Bill Seeley, and Jonathan White; is that
20     right?
21     A.   Yes.
22     Q.   Terry Lakowski is an attorney that you retained
23     regarding Title IX and other issues; is that correct?
24     A.   That's correct.
25     Q.   And she says in this e-mail:  "I spoke to Karen
```

```
 1      Morrison this morning" --
 2                  THE COURT:  Well, it's not in evidence yet
 3      because there's an objection.
 4                  MS. FRIEDFEL:  Okay.
 5                  THE COURT:  So before we -- well, in general,
 6      I would like to get the document in before it's contents
 7      are put into the record.
 8                  MS. FRIEDFEL:  Okay.
 9                  THE COURT:  So are you offering the document
10      or --
11                  MS. FRIEDFEL:  Yeah, I mean, I was offering
12      the document to show --
13                  THE COURT:  Well, okay.  The objection is
14      hearsay.
15                  MS. FRIEDFEL:  Correct.
16                  THE COURT:  I already ruled on the privilege.
17      So how do you get around the hearsay objection.
18                  MS. FRIEDFEL:  The hearsay objection?  I'm
19      not offering this for the truth of what the attorney told
20      them about her communications.  I'm not saying --
21      offering it for the truth of what Karen Morrison did or
22      did not say, but more just to the fact that Karen
23      Morrison -- I'm sorry, that Ms. Lakowski was having
24      communications with Karen Morrison on behalf of Varsity
25      Brands about the issues that are discussed in the
```

1    document.
2             THE COURT: Okay. Well okay, you got a
3    couple things. You have two levels of hearsay. You got
4    the document, itself, and you've got the statement in the
5    document.
6             MS. FRIEDFEL: Okay.
7             THE COURT: It doesn't sound to me like you
8    really want the document as much as you want the subject
9    matter. So maybe you don't need the document.
10            MS. FRIEDFEL: I'm happy to question him for
11   that -- without mentioning the document, itself.
12            THE COURT: All right.
13   BY MS. FRIEDFEL:
14   Q.   Mr. Webb, did Ms. Lakowski have communications with
15   Karen Morrison on behalf of Varsity Brands?
16            MS. GALLES: Objection, foundation.
17            THE COURT: If you know.
18   BY THE WITNESS:
19   A.   I don't know for sure.
20   Q.   Was Karen Morrison at the -- work at the NCAA?
21   A.   I don't know Karen Morrison.
22   Q.   You don't know her. Do you know if she works at the
23   NCAA?
24   A.   I don't know that.
25   Q.   You received this e-mail from your attorney; right?

```
 1     A.   Apparently so.
 2     Q.   And you didn't ask her who Karen Morrison was?
 3     A.   No, I did not.
 4     Q.   It didn't concern you about who she was
 5     communicating with on behalf of your company?
 6     A.   No.  During most of this time I was traveling and
 7     I'm primarily just copied on this.  This, primarily,
 8     would have been to Bill Boggs, John White, you know, to
 9     be honest with you, I don't --
10     Q.   Do you know whether or not Varsity Brands has had
11     communications with the NCAA about cheer becoming an
12     emerging sport?
13     A.   About six years ago.
14     Q.   About six years ago.  So you don't know, you were
15     completely unaware until right now, when I showed you
16     this e-mail --
17     A.   Yes, that's correct.  I don't recall seeing this
18     e-mail.
19     Q.   And you had no knowledge that your company was
20     communicating with the NCAA --
21     A.   No, I did not ask Ms. Lakowski to do that, no.  The
22     last time -- no.
23     Q.   Ms. Lakowski is here in the courtroom right now;
24     right?
25     A.   Yes.
```

1  Q.   There's a dispute about this document whether or not
2  it was privileged and whether or not it comes into
3  evidence; is that right?  Or whether --
4  A.   Yes.
5  Q.   I'm sorry, whether or not it would be produced?
6  A.   Yes.
7  Q.   And you didn't talk to her at all about the contents
8  of the document?
9  A.   No, I asked her what was in the document and she
10 said it was about a conversation --
11           MS. GALLES:  No, you can't -- sorry.  Sorry.
12           MS. FRIEDFEL:  Withdrawn, your Honor.  I'm
13 finished with the witness.
14           THE COURT:  Okay.  Redirect?
15 REDIRECT EXAMINATION
16 BY MS. GALLES:
17 Q.   Mr. Webb, I just want to ask you about document FM,
18 which is the USA Cheer document that Ms. Friedfel
19 mentioned to you or showed you.
20 A.   FM.
21 Q.   F as in Frank, M as in Mary.  It's the USA Cheer
22 items.  I'm sorry, F as in Frank, N as in Nancy.
23 A.   Oh, okay, thank you.
24 Q.   I would like to direct you to the last page of that
25 document.

```
 1      A.   Okay.
 2      Q.   When was USA Cheer incorporated?
 3      A.   I believe the actual incorporation was in January of
 4      this year.
 5      Q.   January of --
 6      A.   2010.
 7      Q.   So USA Cheer, Ms. Friedfel asked you several
 8      question relating to the reference to sport within the
 9      USA Cheer --
10      A.   Yes.
11      Q.   -- articles.  Are those references about Cheer as
12      sport, do they pertain to Cheer as it exists today or
13      Cheer as you hope or expect it may be in the future?
14      A.   The documents?  Are you -- I'm sorry, could you ask
15      the question again.
16              MS. FRIEDFEL:  I just object, before the
17      witness answers.  We object to the question as leading.
18              THE COURT:  She's going to ask it again.  I'm
19      sure --
20              MS. GALLES:  Rephrase it, because he didn't
21      even understand it.
22              MR. BRILL:  You didn't do very well.
23              MS. GALLES:  Yeah.
24      BY MS. GALLES:
25      Q.   Mr. Webb; and again, you previously testified that
```

1     you are the president of USA Cheer?
2     A.   Yes.
3     Q.   When -- so when the articles for USA Cheer were
4     filed, were the references to sport in the articles --
5     see now you flustered me.  Just joking.
6     A.   Okay.  Try again.
7     Q.   We'll try one more time.  Okay.
8          Mr. Webb, the USA Cheer articles of incorporation,
9     do they reflect cheer as it is today?
10    A.   It addresses side line cheerleading and its place
11    and the fact that it's important to keep it as it is, but
12    the actual -- the actual intent is to also provide it lot
13    of latitude based on where cheer develops in the future.
14    Q.   So it is an aspirational document about where you
15    think cheer might go?
16    A.   It is at least partially aspirational.  And again,
17    designed to give as much latitude as possible to include
18    not only what exists in cheerleading today, but where it
19    may go, in which direction it may develop.  From a
20    national standpoint and internationally.
21             MS. GALLES:  I have no further questions.
22             THE COURT:  Sir, you are excused.  Thank you.
23             MR. ORLEANS:  Your Honor, as soon as Mr.
24    Webb --
25             THE WITNESS:  Sorry.

1            MR. ORLEANS: Take your time. No problem.
2   Your Honor, the plaintiff's call Jack McDonald to the
3   stand.
4            THE COURT: Please remain standing.
5   J A C K   M c D O N A L D,     called as a witness on
6   behalf of the Plaintiff, having been duly sworn by the
7   Court, testified as follows:
8   DIRECT EXAMINATION
9   BY MR. ORLEANS:
10  Q.   Good afternoon, Mr. McDonald.
11  A.   Good afternoon, John.
12  Q.   Do you mind if I call you Jack?
13  A.   Yes.
14  Q.   You do mind?
15  A.   0 for 1.
16  Q.   I'm comforted to know I'm not the only nervous
17  person in this the room right now.
18       Jack, you are the athletic director for Quinnipiac
19  University?
20  A.   Yes.
21  Q.   How long have you been in that position?
22  A.   Just finishing 15 years.
23  Q.   You testified in the preliminary injunction hearing
24  thin case; didn't you?
25  A.   Yes, I did.